*E-FILED 10/10/2007*

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DONGBING WANG, HAN LI, MINYU WANG,<br><br>　　　　Plaintiffs,<br>　v.<br>ALBERTO GONZALES, United States Attorney General, U.S. Department of Justice; MICHAEL CHERTOFF, Secretary of the Department of Homeland Security; EMILIO T. GONZALEZ, Director of United States Citizenship and Immigration Services; CHRISTINA POULOS, Director of the California Service Center, United States Citizenship and Immigration Services; ROBERT S. MUELLER III, Director of the Federal Bureau of Investigation,<br><br>　　　　Defendants.<br>_____ / | No. C07-02348 HRL<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[Re:   Docket Nos. 18 and 20]** |

　　　This matter presently is before the court on the parties' cross-motions for summary judgment, which were deemed submitted without oral argument.[1]  Upon consideration of the moving and responding papers, the court grants in part and denies in part both motions.

---

[1]　　　Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

## I.  BACKGROUND

Except as otherwise indicated, the following facts are not materially disputed:

Plaintiffs Dongbing Wang, Han Li and Minyu Wang are citizens of the People's Republic of China who sue to compel the processing of their employment-based I-485 applications for adjustment of status to lawful permanent residents.  Dongbing Wang is the primary applicant.  Han Li and Minyu Wang (a minor child) are derivative applicants, and their applications cannot be adjudicated unless and until Dongbing Wang's application is adjudicated.

On April 7, 2004, plaintiffs filed their I-485 applications at the California Service Center of the United States Citizenship and Immigration Services (USCIS).  Name check requests for Dongbing Wang and Han Li were submitted to the Federal Bureau of Investigation (FBI) on April 15, 2004.[2]  (Stearns Decl ¶ 17).  The FBI received those requests on or about April 20, 2004.  (Cannon Decl., ¶¶ 39-40).  Han Li's name check was completed on June 24, 2004; however, her derivative application cannot be adjudicated because the FBI has not yet finished Dongbing Wang's name check.  (*Id*.).  On March 9, 2007, the applications were transferred to the Nebraska Service Center, where they remain pending due to Dongbing Wang's uncompleted name check.

A name check is one of several forms of security and background checks that must be completed when an alien applies for adjustment of status.  (*See* Stearns Decl., ¶ 10).  According to Michael Cannon, Section Chief of the National Name Check Program Section (NNPS) at the FBI's headquarters, a name check proceeds in four stages: (a) batch processing, (b) name searching, (c) file review and (d) dissemination.  (Cannon Decl., ¶ 13).  During the first stage, historically, 68 percent of the name checks submitted by USCIS are returned within 48-72 hours with "No Record," meaning "that the FBI's Universal Index database contains no identifiable information regarding a particular individual." (*Id*.).  The remaining name checks proceed to

---

[2] It is not clear that a name check is required for Minyu Wang.  However, the record presented suggests that aliens under the age of fourteen are generally not subject to as rigorous a background check as adults.  (*See, e.g.,* Stearns Decl., ¶ 14) ("[A fingerprint check] is not performed on aliens under the age of 14.").

2

1  the second processing stage; and, typically, 22 percent of the USCIS requests are returned at
2  this stage within 30-60 days as having "No Record." (*Id*., ¶ 14). Thus, by the end of the second
3  stage, 90 percent of name checks are returned with no identifiable information for a particular
4  individual. (*Id*.). For the remaining 10 percent that proceed to the next stages in the process,
5  FBI records must be manually retrieved and reviewed, unless the relevant records have been
6  electronically uploaded into the FBI's electronic record-keeping system. (*Id*., ¶ 15). In the end,
7  "[l]ess than one percent of USCIS's requests are identified with a file containing possible
8  derogatory information." (*Id*., ¶ 17). Name check requests are generally handled on a "first-in,
9  first-served protocol," unless the USCIS directs the FBI to expedite a name check. (*Id*., ¶ 18).
10 According to Cannon, "USCIS determines which name checks are to be expedited based on
11 criteria it determines." (*Id*.).

12      Plaintiffs claim that defendants have unreasonably delayed the adjudication of their
13 applications, which have been now been pending for three and a half years. Pursuant to the
14 Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. and the mandamus statute, 28 U.S.C. §
15 1361, plaintiffs request that defendants be compelled to expeditiously complete adjudication of
16 their I-485 applications. Specifically, they request that their applications be adjudicated within
17 sixty days of the court's order. Defendants contend that this court lacks jurisdiction to compel
18 the FBI to complete plaintiffs' name checks more expeditiously. Further, defendants argue that
19 any delay in the processing of plaintiffs' applications has not been unreasonable.

## II. LEGAL STANDARD

21      A motion for summary judgment should be granted if there is no genuine issue of
22 material fact and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P.
23 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears
24 the initial burden of informing the court of the basis for the motion, and identifying portions of
25 the pleadings, depositions, answers to interrogatories, admissions, or affidavits which
26 demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.
27 317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence
28 negating an essential element of the nonmoving party's claim or defense or show that the

3

1  nonmoving party does not have enough evidence of an essential element to carry its ultimate
2  burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,
3  210 F.3d 1099, 1102 (9th Cir. 2000).

4  If the moving party meets its initial burden, the burden shifts to the non-moving party to
5  produce evidence supporting its claims or defenses. *See* FED. R. CIV. P. 56(e); *Nissan Fire &*
6  *Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere
7  allegations or denials of the adverse party's evidence, but instead must produce admissible
8  evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue
9  of fact is one that could reasonably be resolved in favor of either party. A dispute is "material"
10  only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at
11  248-49.

12  "When the nonmoving party has the burden of proof at trial, the moving party need only
13  point out 'that there is an absence of evidence to support the nonmoving party's case.'"
14  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477
15  U.S. 317, 325 (1986)). Once the moving party meets this burden, the nonmoving party may not
16  rest upon mere allegations or denials, but must present evidence sufficient to demonstrate that
17  there is a genuine issue for trial. *Id*.

### III. DISCUSSION

**A.   The FBI**

20  Plaintiffs have sued Robert S. Mueller III in his official capacity as Director of the FBI,
21  the agency charged with performing the requisite name checks on all I-485 applicants.
22  Defendants argue that Mueller is not a proper defendant because the Department of Homeland
23  Security, and not the FBI, is responsible for adjudicating adjustments of status under the
24  Immigration and Nationality Act (INA), 8 U.S.C. § 1255. Indeed, the Department of Homeland
25  Security is the agency responsible for implementing the INA. *See* 6 U.S.C. §§ 271(b), 557.
26  Plaintiffs have presented no argument or authority to the contrary. Accordingly, as to Robert S.
27  Mueller III, defendants' motion for summary judgment is granted and plaintiffs' motion is
28  denied.

4

### B. Mandamus and the APA

Plaintiffs seek relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 701, *et seq*. and the mandamus statute, 28 U.S.C. § 1362.  Under the APA, "[t]o the extent necessary to decision and when presented, the reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."  5 U.S.C. § 706(1).  Additionally, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it."  *Id*., § 555(b).  To invoke jurisdiction under the APA, plaintiff must show that defendants (1) had a nondiscretionary duty to act and (2) unreasonably delayed in acting on that duty.  *See Gelfer v. Chertoff*, C06-06724, 2007 WL 902382, *1 (N.D. Cal., Mar. 22, 2007) (*citing Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-65 (2004)).

Under the mandamus statute, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  This relief is "available to compel a federal official to perform a duty if:  (1) the individual's claim is clear and certain; (2) the official's duty is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt, and (3) no other adequate remedy is available."  *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir.1998).

Although the mandatory injunction under the APA is technically distinct from a writ of mandamus, the relief plaintiffs seek is identical under either statute.  *See Independence Mining Co. v. Babbitt*, 105 F.3d 502, 507 (9th Cir. 1997).  Thus, whether the court proceeds under one or the other in the instant case is not of practical significance.  *See Gelfer*, No. C06-06724, 2007 WL 902382 at *3.

Defendants do not challenge this court's jurisdiction to adjudicate claims concerning the pace at which applications are processed.  Indeed, courts in this district have concluded that the USCIS has a mandatory duty to process applications within a reasonable time and, further, that jurisdiction lies to hear an allegation that the determination of an application has been unlawfully withheld.  *See, e.g., Gelfer*, No. C06-06724, 2007 WL 902382 at *2; *Razaq v.*

5

*Poulos*, No. C06-02461, 2007 WL 61884, *3 (N.D. Cal., Jan. 8, 2007); *Singh v. Still*, 470 F. Supp.2d 1064, 1066-67 (N.D. Cal. 2007); *Aboushan v. Mueller*, No. C06-01280, 2006 WL 3041086, *2 (N.D. Cal., Oct. 24, 2006). Accordingly, the crux of the present dispute is whether any delay in the government's processing of plaintiffs' applications has been unreasonable.

**C.    The "TRAC" Factors**

The Ninth Circuit has adopted a six-factor test – the so-called "TRAC" factors[3] – to determine when agency delay is unreasonable:

(1) the time agencies take to make decisions must be governed by a 'rule of reason';

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Brower v. Evans*, 257 F.3d 1058, 1068 (9th Cir. 2001); *Telecomms. Research & Action Center v. Fed. Communications Comm'n*, 750 F.2d 70, 80 (D.C.Cir.1984).

**1.    First and Second Factors**

The first factor requires an agency to use a "rule of reason" in its decision-making. The second factor provides that where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.

---

[3]    These factors are so named for *Telecomms. Research & Action ("TRAC") v. Fed. Communications Comm'n*, 750 F.2d 70 (D.C.Cir.1984).

6

Plaintiffs suggest that the fact that their applications have been pending for over three years is patently unreasonable. Here, they argue that Congress intended applications to be adjudicated within 180 days. *See* 8 U.S.C. § 1571(b) ("It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . .."). That 180-day timetable may provide some guidance here, although defendants correctly note that the "sense of Congress" expressed in INA Section 1571(b) does not necessarily carry the force of law. *See Yang v. California Dep't of Social Servs.*, 183 F.3d 953, 958-59 (9th Cir. 1999).

Defendants argue that there is no statutory deadline by which applications must be adjudicated and that, in any event, the "first-in, first-served" protocol must be given deference. True, Congress has not established a mandatory timeframe for the USCIS to adjudicate applications. Moreover, "'[t]he passage of time alone is rarely enough to justify a court's intervention in the administrative process, especially since administrative efficiency is not a subject particularly suited to judicial evaluation.'" *Yu v. Brown*, 36 F. Supp.2d 922, 934 (D.N.M. 1999) (quoting *Singh v. Ilchert* , 784 F. Supp. 759, 764-65 (N.D. Cal. 1992)). However, the court also recognizes that there is no precise formula for determining whether there has been an unreasonable delay. Instead, "[w]hat constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Yu*, 36 F. Supp.2d at 934.

Here, defendants maintain that it would be unfair to permit plaintiffs to leapfrog other applicants in the "first-in, first-served" queue. While defendants have submitted some evidence generally indicating that the adult plaintiffs' applications have been and are being processed in accordance with the FBI's "normal protocol," (*see* Cannon Decl., ¶¶ 39-40), the record before the court indicates that plaintiffs have waited their turn while untold numbers of later-filed applications have been processed ahead of theirs. As noted above, absent special circumstances, it seems that the majority of applications typically are processed within about six months or so. (*See* Cannon Decl., ¶¶ 13-14; Stearns Decl., ¶ 9 and attached fact sheet at p. 2). According to the USCIS website, as of April 2007 (when the instant lawsuit was first filed), the

7

government was processing I-485 applications received as of August 21, 2006 – i.e., those filed nearly two and a half years after plaintiffs' applications. (*See* Complaint, Ex. 6). In the meantime, Dongbing Wang and Han Li were first fingerprinted on June 5, 2004 – and then apparently had to be re-printed on October 5, 2005 and again on March 16, 2007 because "[t]he fingerprint check must be less than fifteen months old at the time any application or petition is adjudicated." (Stearns Decl., ¶ 14).

The record before the court suggests that processing times for applications will vary because some applications may require greater scrutiny than others. (*See, e.g.,* Cannon Decl., ¶ 37). Here, however, there is no evidence explaining why the FBI needed several years to process Dongbing Wang's name check in particular. Defendants point out that on July 2, 2007, the Department of State announced that the numerical limit on employment-based visa numbers have been exhausted for the fiscal year 2007 and that new visa numbers for the fiscal year 2008 would not be available until October 1, 2007. (*See* Stearns Decl., ¶ 7). However, defendants also readily acknowledge that "[t]his has recently changed and visas are now available as soon as the name check is completed." (Defendants' Mot. at 2 n.1).

### 2. Third and Fifth Factors

The third TRAC factor provides that delays affecting human health and welfare are less tolerable than those concerning only economic interests. The fifth factor requires the court to consider the nature and extent of any interests prejudiced by the delay.

In this case, the nature of the interests at stake are more than merely economic. There appears to be no material dispute that plaintiffs cannot work or travel without restriction. Plaintiffs also allege that the delay in the processing of their I-485 applications has been a setback to their ultimate goal of becoming United States citizens. (Plaintiffs' Opp. at 5). However, this court cannot assume that the government's decision on plaintiffs' pending applications will be favorable to plaintiffs. If the applications are denied, the interest that will have been affected is plaintiffs' interest in knowing sooner rather than later whether they may stay in this country. *See Razaq*, No. 06-02461, 2007 WL 61884 at *7.

As for the extent of the prejudice they have suffered, plaintiffs assert that they "suffer[] from the day-to-day stress of not knowing whether they will be able to settle permanently in the United States or if they will be forced to return to China." (Plaintiffs' Opp. at 5:18-19). However, they have not offered any evidence, by way of declaration or otherwise, substantiating their claims of prejudice. The government, on the other hand, has submitted evidence indicating that "[t]he adult plaintiffs currently hold employment authorization documents to work for any employer they wishes [sic] valid through June 7, 2008. Plaintiffs have not requested travel documents to date." (Stearns Decl., ¶ 21). Thus, the court finds that the interests at stake are important, but plaintiffs' showing as to the extent of any prejudice is nonetheless underwhelming.

### 3. Fourth and Sixth Factors

The fourth TRAC factor directs the court to consider the effect of expediting delayed action on agency activities of a higher or competing priority. However, the sixth factor provides that no finding of impropriety is required before finding that agency action has been unreasonably delayed. Here, defendants assert that, since September 11, 2001, the FBI's workload has increased and it has had to complete security checks more carefully and thoroughly. As such, defendants contend that any delay in the adjudication of plaintiffs' applications is justified in view of the government's paramount interest in securing the nation's safety. Conversely, the government argues that permitting plaintiffs to jump ahead in the "first-in, first-served" process will only delay other applications and intrude upon the government's efforts to safeguard national security.

The uncontroverted evidence submitted by the government indicates that the administrative burden of processing name checks is considerable. The FBI is responsible for handling name checks for a number of government agencies, including USCIS. (Cannon Decl., ¶ 4). Before September 11, 2001, the FBI processed approximately 2.5 million name check requests per year. (*Id.*, ¶ 19). For the fiscal year 2006, the FBI processed over 3.4 million name checks. (*Id.*). Since September 11, 2001, the FBI reportedly has received hundreds of thousands of name check requests from USCIS alone. (*See id.*, ¶ 20; Stearns Decl., ¶ 16). The

9

government indicates that it is currently working to improve its name check process. (*See* Cannon Decl., ¶¶ 29-36). This court appreciates the administrative burden faced by defendants, but it does not find that assertions of overwork alone are sufficient to justify substantial delays. *See Yu*, 36 F. Supp.2d at 934 ("[D]elays of [a significant] magnitude, particularly when they occur over uncomplicated matters of great importance to the individuals involved, may not be justified merely by assertions of overwork.") (citations omitted).

"Undoubtedly, national security must be considered a competing priority of the highest order. However, the mere invocation of national security is not enough to render agency delay reasonable per se." *Singh*, 470 F. Supp.2d at 1069. Here, there is no particularized showing that plaintiffs' applications are especially complex or present any national security concerns. If there were, the fact that plaintiffs are living and working in this country suggests that national security interests require that their background checks be completed sooner rather than later. *See Toor v. Still*, 2007 WL 2028407, No. C07-0645, *2 (N.D. Cal., Jul. 10, 2007) ("[C]onsidering the fact that most applicants will be physically present in the United States, [allowing inaction] seems antithetical to the national security interests."); *see also Dong v. Chertoff*, 2007 WL 2601107, No. C07-0266, *10 (N.D. Cal., Sept. 6, 2007) (same). Additionally, if status were to be adjusted in error, the government may rescind the status and initial removal proceedings. *See* 8 U.S.C. §§ 1227(a)(1)(A), 1256(a); *Singh*, 470 F. Supp.2d at 1070. In any event, as discussed above, it is not apparent that plaintiffs will gain an unfair advantage by being placed back into the "first in, first served" queue.

Thus, while the court is not overwhelmed by plaintiffs' arguments as to the extent of any prejudice they have suffered, it does conclude that they have important non-economic interests at stake. Their applications have been pending for three and a half years, and nothing in the record presented demonstrates that the delay has been reasonable as a matter of law.

## IV. ORDER

Based on the foregoing, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied as to defendant Robert Mueller III. Defendants' motion is otherwise denied, and plaintiff's motion is otherwise granted.

Defendants shall adjudicate plaintiffs' I-485 applications by **December 11, 2007**. By that date, defendants shall file an affidavit with the court demonstrating compliance. This case shall remain open pending receipt of defendants' affidavit.

IT IS SO ORDERED.

Dated:   October 10, 2007

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

1  **5:07-cv-2348 Notice will be electronically mailed to**:

2  Ila Casy Deiss ila.deiss@usdoj.gov, tiffani.chiu@usdoj.gov

3  Justin Fok jfok@jclawoffice.com

4  **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.